LEMMON et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.  March 4, 1901.)

No. 1,407.

1. POSSESSION OF TENANT—EVIDENCE.

Upon the issue whether or not third persons in possession of leased premises during a certain term were holding under the lessee, testimony that they were holding under void leases from other parties for which they paid the rent, and the void leases themselves, are competent evidence.

2. AGENCY—EVIDENCE.

One who has no knowledge of a contract of agency between a principal and an alleged agent, no knowledge of any authority from her to the agent, and no knowledge of any assent by her to any act of her alleged agent in her behalf, is incompetent to testify to the alleged agency.

3. TRUSTEE—ESTOPPEL.

A trustee authorized to collect rents for, and to distribute them among, his cestuis que trustent, who directs the occupants of trust lands to pay the rents for a term to a representative of the cestuis que trustent, is thereby estopped from collecting rents for the same premises for the same term from a lessee to whom he does not deliver possession.

4. LANDS IN THE WINNEBAGO INDIAN RESERVATION HELD IN TRUST.

The United States hold the lands in the Winnebago Indian reservation in Nebraska in trust for the Winnebago tribe of Indians and its members, and they are the parties entitled to the use, benefit, rents, and profits thereof.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Nebraska.

Arthur H. Burnett (H. C. Brome, on the brief), for plaintiffs in error.

W. S. Summers and S. R. Rush, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.  This is an action against Henrietta Lemmon, the principal, and Dwight N. Wheeler and Nick Fritz, the sureties, on a bond conditioned for the performance by Henrietta Lemmon of the covenants of a certain lease of lands in the Winnebago Indian reservation in the state of Nebraska.  The United States brought the action in December, 1892.  It alleged in its complaint that on April 30, 1892, Robert H. Ashley, the United States Indian agent for the Omaha and Winnebago agency, in the state of Nebraska, leased certain lands in the Winnebago Indian reservation to Henrietta Lemmon for the term of one year from the 1st day of May, 1892, to the 1st day of May, 1893; that she covenanted in said lease to pay as rent for said premises $1,697.58 on May 1, 1892; that she and Dwight N. Wheeler and Nick Fritz gave a bond to the United States in the sum of $1,500, conditioned for the performance of the covenants of this lease by her, and that she never paid the rent. Henrietta Lemmon answered separately, and the two sureties filed a joint answer.  The sureties, among other things, averred as a defense to the action that the lease was never delivered to the lessee, that she never obtained possession of the premises, and that she could not and did not have any use or benefit thereof in any manner whatever.

There was a trial to a jury, and a judgment against Henrietta Lemmon, Dwight N. Wheeler, and Nick Fritz, which is challenged by their writ of error.

Under the treaty with the Winnebago Indians and the acts of congress the entire equitable interest, and the right to the income, rents, and profits, of the lands in the Winnebago Indian reservation, belong to the Winnebago tribe of Indians and its members, and the title to these lands is held by the government in trust for their benefit.    12 Stat. 658, c. 53; 14 Stat. 17; 24 Stat. 388, c. 119; 26 Stat. 794, c. 383; Beck v. Real-Estate Co., 65 Fed. 30, 12 C. C. A. 497, 27 U. S. App. 618.

The issues tried in the court below were whether or not Henrietta Lemmon had ever occupied or used, or been able to occupy or use, the leased premises during the term of the lease, and whether or not she had accepted the lease.    The lease was dated on April 30, 1892. The term was from May 1, 1892, to May 1, 1893.    The time when, by the terms of the lease, Henrietta Lemmon was to pay the rent, was on May 1, 1892.    But the lease contained an agreement, and the act of congress under which it was made contained a provision, that it should not be valid or enforceable until it was approved by the secretary of the interior, and it was not approved until September 5, 1892.    26 Stat. 795, c. 383, § 3.    It follows that, even if the lease had been delivered and accepted as soon as it was approved, it could not have constituted a binding agreement between the parties before September 5, 1892, and there could not have been any liability upon Henrietta Lemmon to pay the rent on May 1, 1892, more than four months before the lease became effectual.    In this state of the case, the government undertook to recover upon the ground that Henrietta Lemmon had the use and occupation of the premises from May 1, 1892, although the lease was not approved until four months later, and that by reason of her use and occupation under the lease she accepted and ratified its terms.    Upon the trial of this issue of possession and use by Mrs. Lemmon under the lease, the court below fell into the following manifest errors:

1. The government, in the examination in chief of one of its witnesses, deduced this evidence:

"Q. Did Mrs. Lemmon take possession under that lease? A. Well, I don't know whether I could answer that.    We supposed she was using the land, but whether— Though it was understood when the bond was executed that she made some arrangements, so that she didn't use individually the whole of that land.    Q. Who had been using some portion of that land up to that time?    A. Different parties.    I think Mr. Fritz has been using some of it, and I think the Flournoy Live-Stock & Real-Estate Company had been using some of it. and I don't know but Mr. Wheeler had been using some of it. I think he had."

On cross-examination of this witness, counsel for the plaintiffs in error was denied permission to ask the following question, on the ground that it was not cross-examination:

"Q. Mr. Mathewson, Mr. Sawyer interrogated you with respect to the possession of this land.    It was a fact that Mr. Fritz and the Flournoy Live-Stock & Real-Estate Company were in possession of this land at the time this transaction took place, was it not?"

It is too plain for argument or discussion that this question was far within the lines of proper cross-examination.

2. A witness for the government, who had shown no knowledge of any contract of agency between Henrietta Lemmon and J. S. Lemmon, no knowledge of any authority given by her to J. S. Lemmon to act for her, and no assent by her to any acts of his in her behalf, was permitted to testify, over the objection that his testimony was incompetent, immaterial, and that he had shown no knowledge of the facts, that J. S. Lemmon was generally the agent of Henrietta Lemmon, and a motion to strike this testimony from the record was denied. Agency cannot be proved by the intuition of a stranger, who has no knowledge of the contract, no knowledge of any authority given by the principal, and no knowledge of any assent by the principal to the exercise of authority by the supposed agent.

3. When the evidence for the plaintiff had been introduced, it very clearly appeared that Henrietta Lemmon had never been in possession or occupation of the leased premises during the term of the lease, and that during all that time they had been occupied by the Flournoy Live-Stock & Real-Estate Company and Nick Fritz, and the government undertook to maintain its action upon the theory that the Flournoy Company and Fritz were holding under Henrietta Lemmon, and that their possession was her possession. For the purpose of meeting this contention, the plaintiffs in error offered in evidence a lease of a part of the premises described in Henrietta Lemmon's lease from the Winnebago tribe of Indians to Nick Fritz for the term of five years from April 28, 1891, executed by the council of the Winnebago tribe on the one part, and by Nick Fritz on the other, on April 28, 1891; a lease for the remainder of the premises in Henrietta Lemmon's lease from the Winnebago tribe of Indians to the Flournoy Live-Stock & Real-Estate Company for the term of five years from April 29, 1891, executed by the council of the Winnebago tribe on the one part, and the Flournoy Company on the other; proved beyond controversy that under these leases, which were conceded to be void under the acts of congress, Fritz and the Flournoy Company occupied and used the premises leased to Henrietta Lemmon during the term of her lease; and then offered to prove that, under the advice and direction of the United States Indian agent at the Winnebago agency, the Flournoy company paid to a person selected by the Indian council of the Winnebago tribe for that purpose the rent stipulated in its lease for the time between May 1, 1892, and May 1, 1893, and that on May 1, 1893, Joseph Lamere, who had been appointed for that purpose by the United States Indian agent, Robert H. Ashley, and the council of the Winnebago tribe of Indians, collected from Nick Fritz and the Flournoy Company, as rent for the premises described in the lease to Henrietta Lemmon, for the period covered by that lease, not under the Henrietta Lemmon lease, but under the two prior void leases under which Fritz and the Flournoy Company had held the land during that year, the sum of $2,200, and distributed it to the several members of the Winnebago tribe of Indians by virtue of his appointment and authority. The court rejected all these offers of evidence. These rulings are manifest error, and that for more than one reason. In the

first place, although the leases of 1891 were not authorized by acts of congress, proof of their actual existence, and of the fact that the Flournoy Company and Fritz occupied the premises and paid the Winnebago tribe of Indians rent for these lands during the term covered by the lease to Henrietta Lemmon, was both competent and persuasive evidence that these lessees did not hold under her, but held under the void leases and under the Winnebago Indians. In the second place, it is conceded on all hands that Robert H. Ashley, the United States Indian agent, had authority to collect the rents for these premises, and if, by his direction, the lessees under the invalid leases paid the rent to a representative of the Winnebago tribe of Indians, who accepted and distributed it, with Ashley's knowledge and consent, among those Indians, the government would undoubtedly be estopped from again collecting rent for the same premises of one who never had occupied them, and to whom it never delivered possession under its lease. The Winnebago tribe of Indians and its members were the cestuis que trustent of the government. They were the parties entitled to these rents. If by the direction of the trustee the rents were collected by a representative of the cestuis que trustent, and distributed with the consent of the trustee among the cestuis que trustent, it is difficult to perceive how the trustee can again collect the rents. All this rejected evidence was competent, pregnant, and persuasive upon the issue whether the Flournoy Company and Nick Fritz, who occupied during the term of the Lemmon lease, held under her or under their old leases from the Winnebago tribe of Indians, and it should have been received.

4. A clerk of a subsequent Indian agent, who first entered upon the discharge of his duties on January 15, 1893, was permitted to testify, over the objections of the plaintiffs in error, what the practice in the office of this Indian agent was in 1893 and in subsequent years with reference to the distribution among the members of the Winnebago tribe of the moneys collected for rents of their lands, and he was also allowed to testify, over the objection that his testimony was not the best evidence, what certain rules of the department were, which he conceded were printed and furnished to the agents in the form of a book. The evidence of the practice of a subsequent Indian agent in the distribution of the rents was clearly immaterial, and parol testimony of the printed rules and instructions of the department was as clearly incompetent. On account of these errors, the judgment below is reversed, and the case is remanded to the court below, with instructions to grant a new trial.